The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 22, 2018

## 2018COA25

## Nos. 16CA1646 & 17CA0074, Scott v. Scott, — Torts — Conversion — Unjust Enrichment

In this tort case, a division of the court of appeals considers

the situation where a party to a court-ordered separation agreement

promised to maintain his first wife as the beneficiary of life

insurance proceeds, but then remarried and changed the named

beneficiary to his second wife before his death.

The first wife filed a complaint against the second wife alleging

civil theft, conversion, and unjust enrichment.  Second wife moved

to dismiss under C.R.C.P. 12(b)(5), arguing that first wife's

complaint failed to state a claim for civil theft because it did not

allege intent to permanently deprive her of the proceeds, for

conversion because the husband was the "converter" and first wife

had only an expectancy interest in the proceeds, and for unjust

enrichment because husband was the wrongdoer. She also moved to dismiss under C.R.C.P. 12(b)(6) because husband's estate should have been joined as a necessary party. The court summarily dismissed the entire case based on the reasoning in the motion to dismiss and then awarded second wife attorney fees and costs.

Applying *Warne v. Hall*, 2016 CO 50, the division concludes that the district court did not err in dismissing the civil theft claim for lack of a plausible allegation of intent to permanently deprive. However, the division further concludes that the district court erred in dismissing the conversion and unjust enrichment claims under C.R.C.P. 12(b)(5); first wife plausibly pleaded claims for relief under those theories because she had a vested and irrevocable interest in the insurance proceeds under the terms of the separation agreement. The division also concludes that the district court erred by dismissing the complaint under C.R.C.P. 12(b)(6), reasoning that decedent's estate was not a necessary party to this tort action.

Accordingly, the division affirms the judgment in part and reverses in part, vacates the order granting second wife's motion for attorney fees and costs, and remands the case to proceed on the conversion and unjust enrichment claims.

Court of Appeals Nos. 16CA1646 & 17CA0074
Mesa County District Court No. 15CV30761
Honorable Thomas M. Deister, Judge

Roseann Scott,

Plaintiff-Appellant,

v.

Donna Scott,

Defendant-Appellee.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
ORDER VACATED, AND CASE REMANDED WITH DIRECTIONS

Division A
Opinion by CHIEF JUDGE LOEB
Rothenberg* and Carparelli*, JJ., concur

Announced February 22, 2018

Reams & Reams, Charles F. Reams, Zachary T. Reams, Grand Junction,
Colorado, for Plaintiff-Appellant

Hoskin Farina & Kampf, P.C., Andrew H. Teske, Grand Junction, Colorado, for
Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1     In this civil action, plaintiff, Roseann Scott (Roseann), appeals the district court's order and judgment granting the motion of defendant, Donna Scott (Donna), to dismiss under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief could be granted, and under C.R.C.P. 12(b)(6) for failure to join a necessary party. Roseann also appeals the court's postjudgment order granting Donna's motion for attorney fees and costs. We conclude that Roseann failed to state a claim for only one of her claims and that she did not fail to join a necessary party. We, therefore, affirm the district court's judgment in part, reverse in part, vacate the court's order granting attorney fees and costs, and remand with directions.

I.     Background and Procedural History

¶ 2     Roseann was married to Melvin Scott (Melvin), and the couple dissolved their marriage in 1978. As part of that dissolution, the couple entered into a separation agreement that provided as follows:

> The parties agree that [Melvin] is presently insured under several life insurance policies as listed below. These policies will be maintained in their current status until such time as [Roseann] re-marries, and at that time the beneficiaries may be changed to the children of the parties. Upon emancipation of the parties'

1

> children, if [Roseann] has re-married, [Melvin] may change the beneficiary to whomever he wishes.

The policies listed in the separation agreement, as relevant here, included several policies provided to veterans (the veteran policies) and a life insurance policy through Prudential (the Prudential policy). The Prudential policy is the only insurance policy at issue in this appeal.

¶ 3        Sometime after Melvin and Roseann dissolved their marriage, Melvin married Donna; Roseann never remarried. Melvin and Donna remained married until Melvin's death. A few years prior to his death, and decades after the separation agreement was executed, Melvin changed the named beneficiary on the veteran policies and the Prudential policy to Donna.

¶ 4        Melvin died on August 2, 2015. Donna, as the named beneficiary on the veteran policies and the Prudential policy, received the proceeds from all of these policies. Roseann attempted to apply for the benefits of these policies and discovered they had already been disbursed to Donna. Roseann, through counsel, sent a demand letter to Donna on September 1, 2015, informing Donna of the separation agreement and requesting that the proceeds from

2

the life insurance policies be transferred to her. Donna did not transfer the funds to Roseann, but she eventually put the money from the policies in a trust account pending the outcome of any litigation.[1]

¶ 5    Roseann filed a complaint in the Mesa County District Court naming Donna as the sole defendant in November 2015, and she filed an amended complaint a month later. The amended complaint alleged that Roseann was entitled to receive the money from Donna based on the 1978 separation agreement under theories of civil theft, conversion, and unjust enrichment/constructive trust.[2]

¶ 6    Instead of filing an answer, Donna removed the case to federal district court based on administration of the veteran policies by the federal government. After the case was accepted by the federal district court, Donna filed a motion to dismiss Roseann's claims based on several theories, including federal preemption law as to the veteran policies. Ultimately, the federal district court concluded

---

[1] The parties stipulated that Donna placed the funds in a trust account.
[2] Roseann pleaded unjust enrichment and constructive trust as separate claims in her amended complaint. However, the parties appear to concede that constructive trust is essentially a remedy for unjust enrichment and, thus, we analyze those two claims as one.

that federal legislative intent preempted the 1978 separation agreement, and it dismissed Roseann's claims with prejudice as to the veteran policies only. The federal court remanded Roseann's remaining claims to the Colorado state court for resolution of the claims as to the Prudential policy.

¶ 7     After the case was returned to state court, Donna filed a motion to dismiss under both C.R.C.P. 12(b)(5) and C.R.C.P. 12(b)(6), arguing that Roseann's claims failed to state a claim upon which relief could be granted, and that Roseann had failed to join a necessary party — namely, Melvin's estate. After full briefing, the district court summarily granted the motion to dismiss "for the reasons stated by [Donna] in her motion and reply."

¶ 8     Donna subsequently filed a motion for attorney fees and costs, which the court granted in total based on its dismissal of the entirety of Roseann's case under C.R.C.P. 12(b).

¶ 9     Roseann now appeals the district court's orders granting Donna's motion to dismiss and motion for attorney fees and costs.

## II.     Jurisdiction

¶ 10     In her answer brief, Donna argues that this court lacks jurisdiction to review Roseann's appeal because the district court

"did not adjudicate the merits of Roseann's claims or preclude further proceedings" and, therefore, its order was a dismissal without prejudice, not a final judgment for purposes of appeal. We reject this argument.

¶ 11     A final judgment is a jurisdictional prerequisite to review on appeal. *Brody v. Bock*, 897 P.2d 769, 777 (Colo. 1995). A final judgment for purposes of appeal "ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding." *Harding Glass Co. v. Jones*, 640 P.2d 1123, 1125 n.2 (Colo. 1982) (quoting *D.H. v. People*, 192 Colo. 542, 544, 561 P.2d 5, 6 (1977)).

¶ 12     Ordinarily, the dismissal of a complaint without prejudice is not a final and appealable order because the factual and legal issues underlying the dispute, the merits of the case, have not been resolved. *E.g.*, *Brody*, 897 P.2d at 777; *Harris v. Reg'l Transp. Dist.*, 155 P.3d 583, 585 (Colo. App. 2006). However, a motion to dismiss under C.R.C.P. 12(b)(5) is an assertion that the plaintiff's complaint is legally insufficient and therefore "mandates that the court analyze the merits of the plaintiff's claims." *Hemmann Mgmt. Servs.*

*v. Mediacell, Inc.*, 176 P.3d 856, 858 (Colo. App. 2007); *see also*

*Brody*, 897 P.2d at 777 ("If a judgment in fact completely resolves

the rights of the parties before the court with respect to a claim and

no factual or legal issues remain for judicial resolution, the

judgment is final as to that claim."); *Harris*, 155 P.3d at 585 (noting

that the dismissal of a complaint without prejudice is a final and

appealable order where the circumstances of the case indicate that

the action cannot be saved by an amendment).

¶ 13     In her motion to dismiss, Donna argued that Roseann had

failed to state a claim upon which relief could be granted because

her claims were inapplicable to the procedural and factual

circumstances of this case; in other words, they were insufficient as

a matter of law.[3]  In granting the motion, the district court, without

any analysis or findings, simply adopted Donna's arguments and

ruled that Roseann's claims failed on their merits as a matter of

law.  And, indeed, in her reply brief on appeal, Roseann admitted

that, if she had been ordered to file a further amended complaint,

she would have simply realleged the exact same claims for relief at

---

[3] As an example, Donna argued that Roseann's claims against her
failed because Roseann's interest as a potential beneficiary of the
policies was a mere expectancy.

6

issue here.  Thus, this action would not (and could not) have been saved by an amended pleading.  *See Harris*, 155 P.3d at 585.

¶ 14　The order granting the motion to dismiss based on C.R.C.P. 12(b)(5), thus resolved the rights of the parties as to the claims in the amended complaint and left nothing for the court to do.  Indeed, the register of actions shows that the district court closed the case the day after entering its order granting the motion to dismiss; the district court was required to reopen the matter only when Donna filed her motion for attorney fees.

¶ 15　Because the district court's order granting the motion to dismiss was a ruling on the merits of Roseann's case and left nothing for the court to do to resolve the rights of the parties, we conclude the order was final and appealable, and this court has jurisdiction to hear the appeal.

### III.   C.R.C.P.  12(b)(5) Dismissal

¶ 16　The district court did not specify whether it was granting the dismissal based on Donna's C.R.C.P. 12(b)(5) arguments or her argument based on C.R.C.P. 12(b)(6).  Because the district court adopted all of the reasoning in Donna's motion to dismiss, we

consider her Rule 12(b)(5) assertions and those under Rule 12(b)(6) in turn.

### A. Standard of Review and *Warne v. Hall*, 2016 CO 50

¶ 17 We review a trial court's determination on a motion to dismiss for failure to state a claim upon which relief can be granted de novo. *E.g.*, *Norton v. Rocky Mountain Planned Parenthood, Inc.*, 2018 CO 3, ¶ 7. In our review, we accept all factual allegations contained in the complaint as true and view them in the light most favorable to the plaintiff. *Id.*

¶ 18 Until recently, the standard in Colorado on which to judge whether a complaint stated a claim upon which relief could be granted was the "no set of facts" standard: "a complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him [or her] to relief." *Colo. Med. Soc'y v. Hickenlooper*, 2012 COA 121, ¶ 29, *aff'd*, 2015 CO 41.

¶ 19 In June 2016, the Colorado Supreme Court replaced that standard with the federal "plausibility" standard announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *Warne*, ¶ 24. Under the plausibility

standard, "to survive a motion to dismiss for failure to state a claim, a plaintiff must allege a plausible claim for relief." *N.M. v. Trujillo*, 2017 CO 79, ¶ 20 (citing *Warne*, ¶ 9). The plausibility standard emphasizes that facts pleaded as legal conclusions (i.e., conclusory statements) are not entitled to the assumption that they are true. *Warne*, ¶¶ 9, 27. Notably, Colorado courts have upheld dismissals because a complaint was conclusory in its allegations long before the supreme court announced the plausibility standard in *Warne*. *Id.* at ¶ 18 (citing cases where Colorado courts have found a complaint insufficient because the factual allegations were conclusory).

¶ 20 In this case, Roseann filed her amended complaint prior to *Warne*, but Donna's motion to dismiss and the court's order granting the motion occurred post-*Warne*. Neither party cited to or relied on *Warne* in their briefs in the district court or on appeal. Accordingly, we ordered the parties to file supplemental briefs addressing the applicability of *Warne* and the plausibility standard in this appeal.

¶ 21 Judicial decisions are generally applied retroactively. *E.g.*, *Erskine v. Beim*, 197 P.3d 225, 227 (Colo. App. 2008). In order for a

judicial decision to be given only prospective effect, the decision must, among other things, announce a new principle of law. *Id.* In *Warne*, the supreme court explicitly stated that the opinion did not result in an amendment to the rules of procedure and was only "interpretive gloss." *Warne*, ¶¶ 24, 29. In her supplemental brief addressing the applicability of *Warne*, Roseann did not argue that *Warne* should only have prospective effect.[4]

¶ 22 Therefore, we perceive no reason why *Warne* should not apply in this case. The motion to dismiss was filed after *Warne*, and after the parties had already completed dismissal litigation of the veteran policies in the federal court, which used the plausibility standard in its analysis.

¶ 23 Accordingly, we apply the plausibility standard to Roseann's claims in her amended complaint.

### B.  Roseann's Claims

¶ 24 Roseann's complaint essentially alleged three claims for relief against Donna. We address each in turn.

---

[4] Roseann argued instead that, because her complaint was filed pre-*Warne*, the plausibility standard announced in *Warne* should not apply to her pleading. She did not address the general rule that case law applies retroactively.

## 1. Civil Theft

¶ 25    A plaintiff has a civil cause of action (civil theft) against the taker of stolen property under section 18-4-405, C.R.S. 2017.  This statute allows recovery of treble damages and serves a punitive rather than remedial purpose.  *In re Marriage of Allen*, 724 P.2d 651, 656 (Colo. 1986).

¶ 26    To state a claim for civil theft, a plaintiff must allege the elements of criminal theft: that the defendant "'knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception,' and acts intentionally or knowingly in ways that deprive the other person of the property permanently."  *Van Rees v. Unleaded Software, Inc.*, 2016 CO 51, ¶ 21 (quoting § 18-4-401(1), C.R.S. 2017).  Thus, civil theft, like criminal theft, requires the specific intent of the defendant to permanently deprive the owner of the benefit of the property.  *Id.*

¶ 27    Roseann alleged that Donna "knowingly misused her title as the second spouse of Melvin to obtain assets and funds from Roseann pursuant to the [separation agreement].  Donna is aware of the divorce decree."  Roseann further alleged that "Donna

11

intended to permanently deprive Roseann of the use and benefit of her assets," that she sent a letter to Donna informing her of the separation agreement and demanding the return of the funds, and that Donna refused to transfer the funds to Roseann.

¶ 28 Roseann's allegation regarding Donna's mental state is a single, conclusory statement that Donna acted with the necessary mens rea. In fact, the only mention of Donna's mental state in the amended complaint is a conclusory statement repeating the language in the statute. The complaint does not allege that Donna knew of the separation agreement before she received the insurance proceeds. Instead, it seems to assert that Donna knew of the separation agreement only after she received Roseann's demand letter. We therefore conclude that Roseann's allegation that Donna acted with the requisite intent is conclusory, and without more, it is not entitled to the assumption of truth. *Warne*, ¶¶ 9, 27.

¶ 29 Even considering the allegation that Donna refused to turn over the Prudential funds after Roseann sent a demand letter informing Donna of the separation agreement, we conclude this does not plausibly allege an intent by Donna to permanently deprive Roseann of those funds. Donna received the proceeds of

12

the Prudential policy because she was the named beneficiary.[5]  Her refusal to return the funds was simply based on her assertion that she was legally entitled to the funds as the named beneficiary under the policy; we do not view her conduct as articulating her intent to permanently deprive Roseann of the proceeds, or steal them from her.  Indeed, Roseann's allegation arises from the fact that Melvin changed the named beneficiary of the Prudential policy, and thus does not support any inference as to Donna's intent.  Moreover, the parties stipulated that Donna placed the insurance proceeds in a trust account with her attorney pending the outcome of any litigation over the funds, indicating that she had no intent to permanently deprive Roseann of the proceeds, but only to have a court determine the rights of the parties as to those funds.

¶ 30     Because Roseann failed to sufficiently plead the requisite intent to state a claim for civil theft, we conclude that the district

---

[5] The Prudential policy beneficiary designation was referenced in the amended complaint and is included as part of the record.  In that designation, Donna is named as beneficiary by name, not as the spouse of the decedent.  Accordingly, Roseann's allegation that Donna "knowingly misused her title" as Melvin's second wife is ambiguous at best.

court did not err in dismissing Roseann's claim for civil theft under C.R.C.P. 12(b)(5).

## 2. Conversion

¶ 31 Conversion under Colorado law is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Itin v. Ungar*, 17 P.3d 129, 135 n.10 (Colo. 2000) (quoting *Byron v. York Inv. Co.*, 133 Colo. 418, 424, 296 P.2d 742, 745 (1956)). To state a claim for conversion, Roseann was required to allege in her complaint that "(i) [Donna] exercised dominion or control over property; (ii) that property belonged to [Roseann]; (iii) [Donna's] exercise of control was unauthorized; (iv) [Roseann] demanded return of the property; and (v) [Donna] refused to return it." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1081 (D. Colo. 2012) (citing *Glenn Arms Assocs. v. Century Mortg. & Inv. Corp.*, 680 P.2d 1315, 1317 (Colo. App. 1984)).

¶ 32 Unlike civil theft, conversion *does not* require that the converter act with the specific intent to permanently deprive the owner of his or her property. *Itin*, 17 P.3d at 135 n.10.

14

> An action for conversion does not rest on the defendant's knowledge or consciousness of the wrongdoing, nor the wrongful intent of the defendant. . . .
>
> The act constituting "conversion" must be an intentional act, but it does not require wrongful intent. . . .
>
> Conversion is a species of strict liability in which questions of good faith, lack of knowledge, and motive are ordinarily immaterial. . . .
>
> . . . A person who mistakenly believes that his or her conduct is legal may nonetheless commit conversion.

18 Am. Jur. 2d *Conversion* § 3 (2017) (footnotes omitted). Thus, even a good faith recipient of funds who receives the money without knowledge that it belonged to another can be held liable for conversion. *See Itin*, 17 P.3d at 135 n.10.

¶ 33 Conversion takes place when the converter takes dominion over the property at issue. *Glenn Arms Assocs.*, 680 P.2d at 1317. A person in lawful possession of property may commit conversion when he or she refuses the legal owner's demand for return of the property. *See Davis v. Am. Nat'l Bank of Denver*, 149 Colo. 34, 37, 367 P.2d 325, 326 (1961); *Emp'rs' Fire Ins. Co. v. W. Guar. Fund Servs.*, 924 P.2d 1107, 1111 (Colo. App. 1996).

¶ 34    On appeal, Donna makes several arguments as to why Roseann's conversion claim fails as a matter of law. She primarily argues that it was Melvin who converted the funds when he changed the named beneficiary; that Roseann did not have any vested right in the Prudential policy; and, therefore, that the proceeds did not "belong" to Roseann. We reject these arguments.

¶ 35    We first address the argument that Roseann had no recognizable interest in the Prudential policy proceeds. In *Great American Reserve Insurance Co. v. Maxwell*, 38 Colo. App. 305, 307, 555 P.2d 988, 989-90 (1976), a division of this court held that a divorce decree requiring an insurance policyholder to maintain a policy for a certain beneficiary transforms that beneficiary's expectancy interest in the policy proceeds into an irrevocable "vested right." *See also Rudolph v. Pub. Serv. Co. of Colo.*, 847 F. Supp. 152, 155 (D. Colo. 1994) (citing *Maxwell* for the rule that, in Colorado, "the designation of children as beneficiaries of a life insurance policy in a divorce decree is irrevocable").

¶ 36    Colorado is not alone in adopting this rule:

> Most courts have concluded that a promise, made as part of a separation agreement, to maintain a policy of insurance designating

16

either spouse or children as beneficiaries *vests* in such spouse or children an *equitable interest* in the policy which is superior to that of a stranger to the agreement who was subsequently named gratuitously as beneficiary.

*Torchia v. Torchia*, 499 A.2d 581, 583-84 (Pa. Super. Ct. 1985) (emphasis added) (collecting numerous cases, including *Maxwell*). We find *Maxwell* and these other cases persuasive and applicable here. Accordingly, we conclude that Roseann has a protectable interest as the designated beneficiary of her former spouse's life insurance policy because of the language contained in the separation agreement between her and Melvin, which was, as conceded by the parties, made an order of the court.

¶ 37 We are not persuaded by Donna's argument that *Maxwell* is distinguishable because that case was filed by the insurance company as an interpleader action. In our view, this is a distinction without any meaningful difference. Many cases since *Maxwell* have been filed by the promisees of separation agreements against the recipients of the insurance proceeds, and the courts in these cases have recognized that the promisees have an irrevocable and legally protectable interest in the insurance proceeds. *See id.*

17

¶ 38     We next address and reject Donna's argument that Roseann's claim fails because Melvin was the converter, not Donna. Although the parties have stipulated that Melvin was the person who changed the beneficiary designation on the Prudential policy, under the circumstances here, we conclude that act did not make him a "converter" of the funds. Conversion takes place at the time that the converter takes possession of the converted property. *Glenn Arms Assocs.*, 680 P.2d at 1317. Here, the property converted was the Prudential policy proceeds. Melvin never had possession of the Prudential proceeds because those funds became available only after his death, and Donna received and possessed those funds.

¶ 39     In any event, a lawful possessor of property may become a converter once he or she refuses a demand for return of the property from the lawful owner. *Davis*, 149 Colo. at 37, 367 P.2d at 326; *Emp'rs' Fire Ins. Co.*, 924 P.2d at 1111. Indeed, under Colorado law, a claim for conversion does not require the specific intent to deprive another of property. A good faith recipient of funds can commit conversion. *Itin*, 17 P.3d at 135 n.10. This type of conversion is called "technical conversion" or "innocent conversion." Black's Law Dictionary 407 (10th ed. 2014)

("Technical conversion" is "the taking of another's personal property by one who acts in good faith and mistakenly believes that he or she is lawfully entitled to the property. — Also termed *innocent conversion* . . . .").

¶ 40     Thus, even though Donna may have received the policy proceeds from Prudential in good faith and believed she was lawfully entitled to the funds as the named beneficiary, under the specific circumstances here, and certainly in the procedural context of a C.R.C.P. 12(b)(5) motion, we believe Roseann should be allowed to proceed with her conversion claim against Donna.

¶ 41     We now turn to the allegations in Roseann's amended complaint to determine whether the facts she pleaded were sufficient to satisfy the plausibility test.  *Warne,* ¶ 24.  We conclude that, under the circumstances here, the amended complaint sufficiently alleged facts to state a plausible claim for relief based on conversion.

¶ 42     Roseann alleged in her amended complaint that, under the separation agreement, Melvin was obligated to maintain Roseann as the beneficiary of the Prudential policy and that his remarriage to Donna did not eliminate that obligation.  She further alleged that,

19

after Melvin's death, the funds from the Prudential policy were distributed to Donna, that she sent Donna a letter demanding that Donna transfer the funds to her as the beneficiary under the separation agreement, and that Donna declined to do so. Having incorporated all of her previous allegations by reference, we conclude that Roseann adequately alleged that Donna's dominion and control were unauthorized because of the language in the separation agreement and because of Donna's refusal to return the allegedly converted funds.

¶ 43   Thus, Roseann plausibly alleged that Donna had dominion and control over the Prudential policy proceeds; the proceeds belong to Roseann pursuant to the terms of the separation agreement; Donna was not authorized to have dominion and control over the proceeds; Roseann demanded in a letter that Donna return the proceeds; and Donna refused to return the proceeds. Roseann pleaded each element of conversion sufficiently for that claim to be plausible, *Warne*, ¶ 24, and the district court thus erred in dismissing that claim under C.R.C.P. 12(b)(5).

¶ 44   We emphasize that our holding is limited to the procedural context of this case, which is the summary dismissal of a case on a

C.R.C.P. 12(b)(5) motion. Our holding regarding the conversion claim is further limited to the specific circumstances here — namely, a plaintiff whose claim is based on a vested and irrevocable promise in a court-approved separation agreement to maintain the plaintiff as the beneficiary of proceeds under an insurance policy.

### 3. Unjust Enrichment and Constructive Trust

¶ 45 We also conclude that the district court erred in dismissing Roseann's claim for unjust enrichment and constructive trust.

¶ 46 Unjust enrichment is a quasi-contractual, equitable remedy designed to undo a benefit conferred on one party at the unfair expense of another party. *Pulte Home Corp. v. Countryside Cmty. Ass'n*, 2016 CO 64, ¶ 63. A constructive trust is "a 'flexible equitable remedy that may be imposed to prevent unjust enrichment' by 'enabl[ing] the restitution of property that in equity and good conscience does not belong to the defendant.'" *Meadow Homes Dev. Corp. v. Bowens*, 211 P.3d 743, 748 (Colo. App. 2009) (quoting *Lawry v. Palm*, 192 P.3d 550, 562 (Colo. App. 2008)).

¶ 47 Generally speaking, "a person who is unjustly enriched at the expense of another is subject to liability in restitution." Restatement (Third) of Restitution and Unjust Enrichment § 1 (Am.

Law Inst. 2011) (hereinafter RST). "To prevail on an unjust enrichment claim, a party 'must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation.'"[6] *Pulte Home Corp.*, ¶ 63 (quoting *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008)).

¶ 48    Unjust enrichment claims are legally sustainable where third parties, such as Prudential, make a payment to the ultimate defendant in the case. Generally speaking, "[i]f a third person makes a payment to the defendant to which (as between the

---

[6] As a general rule, a party cannot recover for unjust enrichment as a matter of law where there is an express contract addressing the subject of the alleged obligation to pay. *Pulte Home Corp. v. Countryside Cmty. Ass'n*, 2016 CO 64, ¶ 64; Restatement (Third) of Restitution and Unjust Enrichment § 2 (Am. Law Inst. 2011) (hereinafter RST). In this case, there are arguably two express contracts: the separation agreement and the Prudential policy and beneficiary designation in that policy. However, neither of these contracts is between the parties to this civil action, Roseann and Donna. Therefore, this general bar to an unjust enrichment claim is not applicable here. *See* RST § 2 cmt. c ("Considerations of both justice and efficiency require that private transfers be made pursuant to contract whenever reasonably possible, and that *the parties' own definition of their respective obligations . . .* take precedence over the obligations that the law would impose in the absence of [an] agreement.") (emphasis added).

[plaintiff] and the defendant) the [plaintiff] has a better legal or equitable right, the [plaintiff] is entitled to restitution from the defendant as necessary to prevent unjust enrichment." RST § 48. More specifically, a claim for unjust enrichment is proper where each of the parties has a claimed independent right to a payment that has been received by the defendant from a third party. *Id.* § 48 cmt. d.

¶ 49    As illustrated by the cases collected in *Torchia*, 499 A.2d at 583-84, many cases have involved competing claims to a decedent's life insurance proceeds after a dissolution of marriage. Indeed, the Restatement specifically notes that "[c]ompeting claims to [a] decedent's assets after family dissolution" is a common theme for third-party unjust enrichment claims. RST § 48 cmts. d, g. The Restatement explicitly articulates the exact circumstances of this case as an example of a proper claim for unjust enrichment:

> The more frequent source of disputes . . . is the breach of a contractual undertaking, made in the context of family dissolution, to cause former family members to take a beneficial interest in specified financial assets (typically life insurance . . . ) remaining within the legal control of the promisor. At the death of the promisor, the assets in question are payable instead to other named beneficiaries: typically,

23

> to surviving family members from a subsequent marriage. . . . The promisees accordingly claim the disputed assets from the named beneficiaries . . . , asserting that their entitlement is paramount. . . . [T]he [promisee]'s remedy is typically via constructive trust.

RST § 48 cmt. g & illus. 22.

¶ 50 We again turn to the allegations in the amended complaint to determine whether Roseann stated facts sufficient for a plausible claim of unjust enrichment and constructive trust. Roseann alleged that Donna received a benefit that was promised to Roseann in the separation agreement; that Roseann attempted to apply for the Prudential policy proceeds, but the proceeds had already been paid to Donna; and that, given the promise made to her in the separation agreement, it would be inequitable under the circumstances for Donna to retain the funds. Roseann sought imposition of a constructive trust, alleging that Donna had received the funds from Prudential and that she was not entitled, under the terms of the separation agreement, to receive those funds. Roseann asked the court to impose a constructive trust on the assets held by Donna and to declare that Donna held those assets in constructive trust for Roseann's benefit. We conclude these allegations stated a

24

plausible claim for unjust enrichment and the imposition of a constructive trust.

¶ 51    As with the conversion claim, Donna's primary argument is that the district court's dismissal of the unjust enrichment claim should be affirmed because Melvin was the main wrongdoer in this situation. However, claims for unjust enrichment and constructive trust do not require wrongdoing on the part of the person receiving the benefit. *E.g., Mayer v. Bishop*, 551 N.Y.S.2d 673, 675 (N.Y. App. Div. 1990) ("[I]t is not a prerequisite of an unjust enrichment claim that the one enriched commit a wrongful or unlawful act . . . ."); *Faulknier v. Shafer*, 563 S.E.2d 755, 759 (Va. 2002) ("[C]onstructive trusts can arise even when property has been acquired fairly and without any improper means."); 66 Am. Jur. 2d *Restitution and Implied Contracts* § 11 (2017) ("Although unjust enrichment may arise from fraud or several other predicates, the element of fraud or tortious conduct on the part of a defendant is not necessary in an action for unjust enrichment.") (footnote omitted).

¶ 52    We recognize that Donna's good faith receipt of the Prudential policy proceeds may be considered by the fact finder in determining whether the circumstances make it unjust for her to retain the

25

funds and whether the proceeds in equity and good conscience should go to Roseann as required for imposition of a constructive trust. *See Faulknier*, 563 S.E.2d at 760 (listing circumstances that may be considered by the fact finder in determining whether the plaintiff is entitled to a constructive trust); RST § 48 cmt. i ("Proof merely that the defendant has received a windfall, that the claimant has been ill-treated, and that the third party's payment to the defendant . . . violates rules of good faith, basic fairness, or common decency, does not suffice to make out a claim in restitution . . . ."). Here, we have a particularly difficult case in which two arguably innocent parties assert legal claims to the same insurance proceeds. However, resolution of these claims should not be decided on a motion to dismiss under C.R.C.P. 12(b)(5), but, rather, should be left to a fact finder's determination of equity under the totality of the circumstances.

IV. Failure to Join a Necessary Party — C.R.C.P. 12(b)(6)

¶ 53 Donna also argued that Roseann's complaint should be dismissed under C.R.C.P. 12(b)(6) because Roseann failed to join a necessary party — namely, Melvin's estate. The district court may have adopted this reasoning as well when it dismissed the case for

"the reasons stated" in Donna's motion and reply. Because we conclude that the amended complaint properly stated claims for conversion and unjust enrichment, we must now decide whether the complaint was nonetheless properly dismissed under C.R.C.P. 12(b)(6) because it failed to join Melvin's estate. We conclude that Melvin's estate was not a necessary party. Therefore, the district court erred in dismissing the case under C.R.C.P. 12(b)(6) as its basis as well.

¶ 54    Under C.R.C.P. 12(b)(6), a case may be dismissed if the plaintiff fails to join a party under C.R.C.P. 19. The relevant portion of C.R.C.P. 19(a) provides as follows:

> A person who is properly subject to service of process in the action shall be joined as a party in the action if: (1) In his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may: (A) As a practical matter impair or impede his ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Under C.R.C.P. 19, generally all parties having an interest in the property at issue must be joined. *Clubhouse at Fairway Pines,*

27

*L.L.C. v. Fairway Pines Estates Owners Ass'n,* 214 P.3d 451, 454 (Colo. App. 2008).

¶ 55    However, we conclude that Melvin's estate was not required to be joined as a party under C.R.C.P. 19.  Under the remaining claims for relief in Roseann's amended complaint, complete relief can be accorded between Roseann and Donna because Donna has possession of the proceeds at issue.  Moreover, Melvin's estate will not be harmed in any way if it is not a party to this action because the life insurance proceeds were never part of the estate assets, but were instead disbursed directly to Donna by Prudential.  Melvin's estate has no interest in those proceeds that would necessitate its joinder in this action.

¶ 56    Importantly, this is not an action for enforcement of the separation agreement.[7]  Rather, this is essentially an action in tort, seeking legal and equitable relief against a person (Donna) who has possession of funds to which Roseann claims she is legally entitled.  Therefore, Melvin's estate, while perhaps a proper and necessary

---

[7] Under section 14-10-112(5), C.R.S. 2017, Roseann would not be allowed to sue in contract for breach of the separation agreement; she can only seek enforcement of the separation agreement as a judgment of the domestic court.

party in an enforcement action, is not a necessary party to this action that alleges claims in tort and equity directly against Donna. Donna points to no Colorado cases, and we have found none, that would require Roseann to sue Melvin's estate under an enforcement theory instead of pursuing her claims against Donna.

¶ 57 Thus, because complete relief can be accorded to Roseann, and the disposition of this action will not harm the interests of Melvin's estate, we conclude the estate is not a necessary party to the action under C.R.C.P. 19. Accordingly, the district court's order dismissing the case under C.R.C.P. 12(b)(6) must be reversed.

## V. Attorney Fees and Costs

¶ 58 After the court granted her motion to dismiss, Donna moved for attorney fees under section 13-17-201, C.R.S. 2017, and for costs under sections 13-16-113(2) and 13-16-107, C.R.S. 2017, and C.R.C.P. 54(d) based on the district court's dismissal of Roseann's complaint under C.R.C.P. 12(b). After a hearing, the district court granted Donna's motion for reasonable attorney fees and costs in total, stating that "the statutes under which [Donna] has made her claims for attorney fees and costs are applicable and appropriate."

¶ 59    Roseann contends that Donna is not entitled to attorney fees and costs because the court erred in granting Donna's motion to dismiss. We agree.

¶ 60    Sections 13-17-201 and 13-16-113(2) require a court to award reasonable attorney fees and costs, respectively, to the defendant when the court has dismissed the action pursuant to a defendant's motion under C.R.C.P. 12(b). Section 13-16-107 allows for the recovery of costs to the prevailing party on a motion to dismiss. And, C.R.C.P. 54(d) allows for reasonable costs to be recovered by the prevailing party in a civil action.

¶ 61    However, section 13-17-201 "does not authorize recovery [of attorney fees] if a defendant obtains dismissal on some, but not all, of a plaintiff's tort claims." *Colo. Special Dists. Prop. & Liab. Pool v. Lyons*, 2012 COA 18, ¶ 60. Because we conclude that the district court improperly granted Donna's motion to dismiss under C.R.C.P. 12(b)(5) (as to the claims for conversion and unjust enrichment) and 12(b)(6), we conclude that the court's order granting attorney fees and costs must be vacated. An award of costs under section 13-16-113 is no longer appropriate because the entire "action" has not been dismissed under C.R.C.P. 12(b).

¶ 62     Further, any costs awarded under section 13-16-107 and C.R.C.P. 54(d) are also inappropriate because Donna is no longer a prevailing party.  *E.g.*, *Gonzales v. Windlan*, 2014 COA 176, ¶ 50 ("[A] prevailing party is one who 'prevails on a significant issue in the litigation and derives some of the benefits sought by the litigation.'" (quoting *Archer v. Farmer Bros. Co.*, 90 P.3d 228, 230 (Colo. 2004))).

## VI.    Conclusion

¶ 63     The judgment is affirmed in part and reversed in part, and the case is remanded with directions.  The district court's order granting Donna's motion for attorney fees and costs is vacated.

JUDGE ROTHENBERG and JUDGE CARPARELLI concur.